UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| GREAT AMERICAN LIFE INSURANCE COMPANY, | : | No. 1:12-cv-00828 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION AND ORDER** |
| | : | |
| MARVIN DIXON, et al., | : | |
| | : | |
| Defendants. | : | |

Before the Court are the following motions: Plaintiff's
motion for an order to pay disputed death benefit proceeds (less
its attorneys' fees and costs) into the Court and to dismiss it
with prejudice from this action (doc. 18), Defendant Marvin
Shenkin's memorandum in opposition (doc. 22), Plaintiff's reply
(doc. 24) and Defendant Marvin Shenkin's sur-reply (doc. 28)[1];
Defendant Marvin Shenkin's Motion for Summary Judgment (doc.
17), Plaintiff's response (doc. 19), Defendant Marvin Dixon's
memorandum in opposition (doc. 20) and Defendant Marvin
Shenkin's pleading titled "Supplemental Memorandum" which the
Court interprets to be his reply[2] (doc. 26); and Defendant Marvin

---

[1] S.D. Ohio Civ. R. 7.2(a)(2) does not permit the filing of a
sur-reply memorandum without leave of court for good cause
shown. Neither Plaintiff nor Defendant Dixon, however, filed a
motion to strike it from the docket.
[2] This pleading was not filed within the fourteen (14)-day time
period specified by S.D. Civ. R. 7.2(a)(2). Again, neither

Dixon's Motion for Summary Judgment (doc. 21), Plaintiff's response (doc. 25), Defendant Marvin Shenkin's memorandum in opposition (doc. 23) and Defendant Marvin Dixon's reply (doc. 27). For the reasons that follow, Plaintiff's motion and Defendant Shenkin's motion are DENIED and Defendant Dixon's motion is GRANTED.

### I. Background

On July 18, 2001, Plaintiff Great American Insurance Company issued a term life insurance policy (PC2000849) to the Insured, Anna F. Holiday. (doc. 21-1 Exh. A pp. 3-25). She named her sister, Mary Dixon and her brother, Defendant Marvin Dixon as her primary beneficiaries, with a different sister, Paula Nelson, as her contingent beneficiary (id. p. 17). On September 27, 2006, the Insured submitted a "Policy Change Request" to effect a "Change of Beneficiary," naming her brother, Defendant Dixon, as her primary beneficiary and her fiancé, Defendant Marvin B. Shenkin, as her contingent beneficiary (id. at pp. 22-23, 26-27). Great American acknowledged this policy change in a letter to Holiday dated October 10, 2006 (id. p. 28). That letter stated in part:

> We are pleased to inform you that the change you requested to your life insurance policy has been processed. We have updated our records to reflect your beneficiary change.

---

Plaintiff nor Defendant Dixon filed a motion to strike it from the docket.

```
        Primary Beneficiary:      MARVIN DIXON
        Contingent Beneficiary:   MARVIN B SHENKIN
```

(<u>Id</u>.)

    At the end of April 2012, the "Holiday Family Trust" was established, with Holiday named as the Trustee and Defendant Shenkin as the Successor Trustee (<u>id</u>. at pp. 36-105). At that time, Holiday transferred "100% of [her] personal property owned" to the Trust (<u>id</u>. at p. 51). Some three months later, specifically on August 4, 2012, Holiday died of a heart attack. Defendant Shenkin notified Great American by telephone of Holiday's death on August 9 (<u>id</u>. at p. 123). Thereafter it sent a letter to Defendant Shenkin on August 14, acknowledging the death of its Insured and enclosing a "Claimant's Statement" form, asking that it be completed by Defendant Dixon as the beneficiary of the policy (<u>id</u>. at p. 117). On August 20, Defendant Dixon submitted a "Claimant's Statement" form to Great American, which was file-stamped "RECEIVED" on August 26, in which he asked for a lump-sum payment to him as beneficiary (<u>id</u>. at p. 114). On August 27, the Law Offices of Senn Koppel sent to Great American, via facsimile transmittal, a letter from "Marvin Shenkin, Trustee of the Holiday Family Trust" (<u>id</u>. at p. 113). By its language, that letter purported to be a "petition for declaratory relief, to determine the rights and responsibilities of the parties included but not limited to the

Trustee and all beneficiaries to the [T]rust and the life insurance policy recently incorporated into the [T]rust[]" (id. at p. 109). Continuing, Defendant Shenkin identified a "dispute among the beneficiaries" as follows:

> Initially the policy named Marvin Dixon as the sole beneficiary of the life insurance policy, however on April 18, 2012 Anna Holiday created the [T]rust intending all of her real and personal property was to be included in the [T]rust. She also orally told each of the beneficiaries and other third parties who created the [T]rust with her, that the proceeds of the life insurance policy were to be distributed:
>
> 50% Marvin Shenkin, Trustee; and
> 50% Mary Dixon, Beneficiary, Anna's disabled sister.

(Id. at p. 109.) Defendant Shenkin requested that Great American inform him of its position.

In a letter to Defendant Shenkin dated August 30, Great American stated, based on the Insured's 2006 written request, that it considered Defendant Dixon—the beneficiary of record—entitled to the policy's death benefit. It invited Defendant Shenkin to submit a copy of "any other change form initiated by Ms. Holiday after [2006], any confirmation letter from our office, or any other documentation which specifically requested a change of beneficiary for this policy from her" for its review and consideration. It listed the documents necessary to contest the designation of record, and notified him that Defendant Dixon also might make a claim. Finally, Great American advised, "[i]n the case of conflicting claims for policy proceeds, we may be

4

required to file an interpleader action and the court will decide who is entitled to receive [the] proceeds." (Id. at p. 108.)  In a follow-up letter dated September 6, Great American instructed Defendant Shenkin that it would make payment to Defendant Dixon unless he filed a claim by September 16 (id. at p. 106).  Attorney Senn Koppel replied, designating his letter "as a formal contest to the designation of record and as a claim for death benefit proceeds on behalf of the Trust."  He also designated his letter "as a formal demand to pay the proceeds of the policy to the [T]rust directly and not to Marvin Dixon" requesting, in the alternative, to file an action in interpleader in San Bernardino [California] Superior Court, and that "Mr. Shenkin will be glad to accept service for said Interpleader on behalf of the [T]rust." (Id. at p. 128.)

Plaintiff Great American's "Complaint for Interpleader" was filed with the Clerk of this Court on October 25, 2012 (doc. 1). Both Defendant Dixon (doc. 6) and Defendant Shenkin (docs. 11, 14) answered.  We held a preliminary pretrial conference in this matter on March 7, 2013.  Counsel for Plaintiff and Defendant Dixon appeared in person and by telephone, respectively, with no appearance by Defendant Shenkin.  Our Order memorializing that conference contained the following observation and instruction:

The Court notes that Defendant Marvin Shenkin is proceeding pro se and that he did not appear for the preliminary pretrial conference either in person or by

5

phone.   The Court further notes that Mr. Shenkin has presented himself in his filings in this matter both as an individual and in his capacity as Trustee on behalf of the Holiday Family Trust.   The Court cautions Mr. Shenkin that he may not proceed in a <u>pro</u> <u>se</u> capacity as a trustee because to proceed <u>pro</u> <u>se</u> means to represent oneself, not, as in the case of a trustee, the interests of the trust. Thus, Mr. Shenkin is advised to either secure counsel or to proceed only as an individual representing his own interests.   If he chooses the latter, Mr. Shenkin is further advised that he is expected to fully participate in all conferences before the Court.

(Doc. 15 at p. 1.)  On March 14, a letter from Defendant Shenkin to the Court dated March 11 was docketed by the Clerk (doc. 16). In it, Defendant Shenkin apologized for his failure to appear, stating that he believed that counsel for Plaintiff was going to contact him to be part of the conference (<u>id</u>.).   He made no comment with regard to our instruction that he could proceed in a <u>pro</u> <u>se</u> capacity on behalf of himself only, <u>not</u> as Trustee of the Holiday Family Trust (<u>id</u>.).   The first in the series of motions identified above was filed on May 8, 2013.

## II.  Summary Judgment Standard

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The process of evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well-settled.  First, "a party seeking summary

judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>see</u> <u>LaPointe v. United Autoworkers Local 600</u>, 8 F.3d 376, 378 (6th Cir. 1993).  This burden may be satisfied, however, by the movant "pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." <u>Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.</u>, 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the opposing party must submit evidence in support of any material element of the claim or defense at issue in the motion on which it would bear the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 331-32.  As "the requirement [of the Rule] is that there be no <u>genuine</u> issue of <u>material</u> fact," the Supreme Court has made clear that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) (emphasis in original).  Ancillary factual disputes, those "that are irrelevant or unnecessary[,] will not be counted." <u>Id.</u>  Furthermore, "[t]he mere existence of a

scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [non-movant]." Id. at 252. Instead, the opposing party must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Companies, Inc., 8 F.3d 335, 339-40 (6th Cir. 1993) (applying Anderson, 477 U.S. at 249-50; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

At this summary judgment stage, it is not our role "to weigh the evidence and determine the truth of the matter but [rather] to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. In so doing, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-59 (1970) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962))). Adherence to this standard, however, does not permit us to assess the credibility of witnesses. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994) (citing Anderson, 477 U.S. at 255)).

8

## III. Discussion

Defendant Dixon has filed a motion for summary judgment asking this Court to declare him the named beneficiary of the term life insurance policy at issue and to order Plaintiff to pay him the policy's death benefit. The Court finds Dixon's motion well-taken.

In the "Ownership and Beneficiary" Section of the policy, the following terms and conditions are set forth:

**Owner**
The owner of this policy is the Insured person on page 3, unless stated otherwise in the application or later changed. As owner, You can exercise all rights under your policy <u>while the Insured is alive</u>. <u>You can change the ownership if You send us a Written Request to do so</u>. If a new owner is named, any earlier designations will be void.

**Beneficiary**
The beneficiary is the person or persons named by You to receive the Proceeds when the Insured dies. If two or more beneficiaries are alive when the Insured dies, We will pay them in equal shares unless You have chosen otherwise. If no beneficiary is alive when the Insured dies, You will be the beneficiary if living, otherwise the Proceeds will be paid to your estate.

**Change**
<u>To change the owner or beneficiary, send a Written Request while the Insured is alive</u>. The change will not take effect until it is recorded at our Life Administration Office. Once recorded, it will take effect as of the date You signed it. The change will not apply to any payment made by us before We recorded your request. If You have named an irrevocable beneficiary, You will need that beneficiary's consent in order to make a change of beneficiary.

**Assignment**
<u>You may assign this policy</u>. <u>We will not be bound by any assignment unless it</u> is in writing, signed by You, and <u>is</u>

<u>recorded at our Life Administration Office</u>.  We are not responsible for the validity of any assignment.  Any amount to be paid to an assignee will be paid in a single sum.  Any claim made by an assignee will be subject to proof of the assignee's interest and the extent of the assignment.

(Doc. 21-1 Exh. A at p. 10 (emphasis added).)  Holiday was both the owner of the policy and the Insured.  She obviously comprehended her status as listed herself as both on the "Policy Change Request" she completed on September 27, 2006.  That request had the effect of removing Mary Dixon and Paula Nelson as primary and contingent beneficiaries, respectively, leaving Marvin Dixon as primary (and now sole) beneficiary and adding Marvin Shenkin as contingent beneficiary, and it was approved and acknowledged by Plaintiff on October 10, 2006.  (<u>See</u> <u>id</u>. at pp. 22-23, 26-27.)  Plainly, Holiday understood both the meaning of, and the necessity of following, the terms and conditions within "Ownership and Beneficiary" Section as she dutifully complied with them in 2006.  At <u>no</u> time did she ever ask Plaintiff to transfer the <u>ownership</u> of the policy, and she did not request any <u>other</u> change of beneficiary <u>post-2006</u>.

The Supreme Court of Ohio has made clear that, when an insurance company files an interpleader action, the test for deciding between competing beneficiaries is whether the policy owner's intent to change beneficiaries was clearly communicated to the insurance company.  <u>LeBlanc v. Wells Fargo Advisors, L.L.C.</u>, 134 Ohio St. 3d 250, 2012-Ohio-5458, 981 N.E.2d 839, at

10

¶ 41 (citing <u>Rindlaub v. Travelers Ins. Co.</u>, 175 Ohio St. 303, 305, 194 N.E.2d 577, 579 (1963)).  If it was, the new beneficiary is entitled to the proceeds, but, if it was not, the original beneficiary is to be paid. Here, any alleged intent by Holiday to remove Defendant Dixon as the sole primary beneficiary of the policy, or to add Defendant Shenkin in his capacity of Trustee as a co-beneficiary, or any other permutation involving Holiday's sister, Mary Dixon or the Holiday Family Trust, very clearly was <u>not</u> communicated to Great American.

Defendant Shenkin maintains that the "Schedule of Assets Transferred to Trust" approved by Holiday on April 23, 2012 verifies her wish to transfer "100% of [her] personal property owned[,]" which <u>ipso</u> <u>facto</u> would include the policy. The Court finds this inference far from obvious, inasmuch as we observed earlier that Holiday previously followed the terms and conditions within "Ownership and Beneficiary" Section of the policy when she wished to change its primary beneficiary in 2006, so why in 2012 would she not follow suit if she wished to transfer ownership to the Trust? Further, even if the Trust were the owner of the policy, Defendant Dixon remained its named beneficiary, a designation subject to change by the owner— whether Holiday or the Holiday Family Trust—<u>only while the Insured is alive</u>. Upon Holiday's death, <u>no</u> change of

11

beneficiary is allowed.   The same logic attends with respect to the assertion that Holiday was permitted to "assign" her interest as owner of the policy to the Trust.   Indeed she was, but, again, as specified by the terms and conditions within "Ownership and Beneficiary" Section of the policy, any assignment had to be "recorded" in the same fashion as changes in beneficiaries or ownership, which necessarily entails <u>notice</u> to Great American of Holiday's intent.   Moreover, as Defendant Dixon correctly contends, policy assignments typically are made as collateral to secure a debt, and they do not "divest the [I]nsured of [her] general property in the policy, but creates only a lien in favor of the assignee to the extent of the debt owed."   <u>Katz v. Ohio Nat'l Bank</u>, 127 Ohio St. 531 (syl. ¶ 1), 191 N.E. 782 (1934).   An assignment, furthermore, does <u>not</u> amount to a change of beneficiary.   <u>Id</u>. (syl. ¶ 3).

Defendant Dixon properly calls the Court's attention to Defendant Shenkin's vacillation between arguing on behalf of himself and arguing on behalf of the Trust as Trustee.   A prime example of this behavior is contained within the pleading we have designated as Defendant Shenkin's sur-reply to his motion for summary judgment (doc. 28).   On the one hand, he takes the position that Holiday meant to designate him, along with Defendant Dixon, as a <u>co</u>-beneficiary, rather than a <u>cont</u>ingent beneficiary, thus entitling him to 50% of the policy's death

12

benefit[3] (doc. 28 at p. 1).    On the other hand, he urges the Court to find that Holiday permissibly assigned the policy to the Trust purportedly giving it discretion to distribute the policy's death benefit according to the terms of the Trust. Defendant Dixon reminds the Court of the language contained within our March 13, 2013 Order, and, by way of enforcement thereof, asks us to strike all the various (and random) pleadings filed by Defendant Shenkin, including his motion for summary judgment.   The Court agrees that Defendant Shenkin very clearly failed to heed our instruction that he could proceed pro se as an individual, but that, in his role as Trustee of the Holiday Family Trust, he must retain counsel.  He has improperly blurred the distinction between himself individually as the Insured's fiancé as opposed to himself as Trustee of the Holiday Family Trust.    For him to "represent" the Trust before this

---

[3] This contention strains credulity.  When the policy was issued in 2001, Holiday listed two primary beneficiaries, or "co-beneficiaries" as Defendant Shenkin would describe them, specifically her sister Mary Dixon and her brother Marvin Dixon, with her sister Paula Nelson listed as contingent beneficiary. In 2006, Holiday removed her sister Mary, but left her brother Marvin as the primary beneficiary, and removed her sister Paula, but added her fiancé Marvin as the contingent beneficiary.  Why Holiday would appreciate the distinction between a co-beneficiary versus a contingent beneficiary in 2001, but overlook it in 2006, is a mystery.  The letter confirming receipt of her request itself draws attention to the distinction, as the primary beneficiary is labeled and listed on the top line and the contingent beneficiary is labeled and listed on the line below.  Regardless, Holiday's thought process need not be discerned, as her intent is extraneous to the legal issue before the Court.

Court implicates issues of conflict of interest, breach of fiduciary duty and the unauthorized practice of law.  In the interests of justice, however, we think it appropriate to have addressed some of the arguments raised by Defendant Shenkin, as their utter lack of merit facilitates our determination with regard to Plaintiff's motion, to which we now turn.

Plaintiff Great American has moved for an order from the Court allowing it to deposit the disputed death benefit proceeds with the Clerk pursuant to Fed. R. Civ. P. 67 and for dismissal with prejudice from this cause of action.  We have carefully reviewed all of the pertinent documentary evidence in this matter, all of which was available to—and considered by—Great American prior to filing its complaint for interpleader.  Given the clarity of Ohio law as applied to the undisputed facts of this case, we question the need for interpleader in this particular instance.  Defendant Dixon is patently entitled to the death benefit at issue, as Plaintiff itself recognized in its pre-litigation correspondence with Defendant Shenkin.  The Court is mindful of the benefits of interpleader, and the Sixth Circuit's encouragement to allow insurance companies to deduct their attorneys' fees and expenses from the proceeds when equitable.  See Holmes v. Artists Rights Enforcement Corp., 148 F. App'x 252, 259 (6th Cir. 2005).  The facts of this case, however, do not support "multiple" bona fide claims to the death

14

benefit.   See  Lindsey  v.  Primerica  Life  Ins.  Co.,  No.
1:00CV000789, 2002 WL 1585908, at *2 (M.D.N.C. May 17, 2002).
Furthermore, while Great American advised Defendants Dixon and
Shenkin that, "[i]n the case of conflicting claims for policy
proceeds, we may be required to file an interpleader action and
the court will decide who is entitled to receive [the]
proceeds[]" (see doc. 21-1 Exh. A at pp. 108, 110), no mention
was made that it concomitantly would ask the Court to deposit
the proceeds of the death benefit minus its attorneys' fees and
costs as was the situation in Holmes.   148 F. App'x at 259.
Accordingly, Plaintiff's motion is DENIED.

**IV.  Conclusion**

    The only material question of fact in this matter is
whether Holiday communicated her intent to Great American—prior
to her death—to change the beneficiaries she named on September
27, 2006.  There is no admissible evidence that she did—whether
it was to add her fiancé Defendant Shenkin (in addition to her
brother Defendant Dixon) as a primary beneficiary, or (to remove
Defendant Dixon altogether, and) rename her sister, Mary Dixon,
along with Defendant Shenkin, as the primary beneficiaries.
Accordingly, Defendant Marvin Dixon is entitled to a declaratory
judgment that he is the named primary beneficiary of the policy
and thus solely entitled to payment of its death benefit.  The
Court so finds, GRANTS Defendant Dixon's motion for summary

15

judgment (doc. 21) and ORDERS Plaintiff Great American Life Insurance Company to pay the Death Benefit Proceeds ($101,000.00)—without deduction for any of its attorneys' fees and costs associated with the filing and prosecution of this interpleader cause of action—plus any interest, to Defendant Dixon forthwith. Upon such payment, Plaintiff Great American Life Insurance Company will be relieved of all liability under the policy to Defendant Dixon as well as to Defendant Marvin Shenkin, individually or in his capacity as Trustee of the Holiday Family Trust. The motion of Plaintiff Great American Life Insurance Company for an order to pay disputed death benefit proceeds (less its attorneys' fees and costs) into the Court and to dismiss it with prejudice from this action (doc. 18) is thus DENIED. Finally, the motion for summary judgment filed by Defendant Marvin Shenkin (doc. 17) is DENIED and this case is now CLOSED on the docket.

       SO ORDERED.

Dated:  May 6, 2014      s/S. Arthur Spiegel_____
                            S. Arthur Spiegel
                            United States Senior District Judge